McCULLOUGH, Judge.
*415 Mark E. Funderburk and Teri F. Funderburk (together "plaintiffs") appeal the Rule 12(b)(6) dismissal of their case. For the following reasons, we affirm.
*416 I. Background
This appeal concerns the trial court's Rule 12(b)(6) dismissal of a suit initiated 8 October 2013 by plaintiffs against JPMorgan Chase Bank, N.A. ("Chase"), and substitute trustees Shapiro and Ingle, LLP ("S & I"), and Trustee Services of Carolina, LLC ("Trustee Services"). By order entered 10 April 2014 following the filing of plaintiffs' original complaint, answers by the substitute trustees, orders denying plaintiffs' motions for preliminary injunctions, and an answer and motion to dismiss by Chase, the trial court granted a motion by plaintiffs for leave to amend their complaint. Plaintiffs then filed an amended complaint and separate motions for ex parte, temporary and permanent injunctive relief on 10 April 2014.
As set forth in the amended complaint, plaintiffs purchased the following eight rental properties in Greensboro between 2002 and 2003:(1) 406 Andrews Street, (2) 2020 Martin Luther King, Jr. Drive, (3) 2018 Martin Luther King, Jr. Drive, (4) 2313 Phillips Avenue, (5) 603 East Florida Street, (6) 4002 Oak Grove Avenue, (7) 4004 Oak Grove Avenue, and (8) 608 East Lee Street (together the "properties"). Plaintiffs obtained mortgage loans in order to purchase the properties and, in return for the loans, executed promissory notes and deeds of trust for each property in favor of Washington Mutual Bank, FA, the original lender. Sometime thereafter, Chase acquired Washington Mutual Bank's interests and became the holder of the promissory notes and the beneficiary under the deeds of trust. S & I and Trustee Services were then named substitute trustees for the benefit of Chase.[1]
Sometime prior to July 2011, Chase attempted to foreclose on the 603 East Florida Street property and plaintiffs filed an action against Chase for wrongful foreclosure. That action was settled via an agreement whereby plaintiffs agreed to bring the mortgage current by paying $4,800 to Chase in exchange for Chase's reinstatement of the mortgage. Plaintiffs then made the $4,800 payment in accordance with the agreement *3 and continued to make monthly payments on the eight properties near the end of each month.
Plaintiffs allege in the amended complaint that Chase failed to comply with the terms of the agreement in that Chase refused to accept payments on the eight properties. Specifically, plaintiffs tendered an online *417 payment to Chase for the eight properties on 31 October 2011 and Chase refunded and re-deposited the mortgage payment electronically on 3 November 2011. Plaintiffs then tendered an online payment to Chase for the eight properties on 14 November 2011 and Chase refunded and re-deposited the mortgage payment electronically on 21 November 2011. Plaintiffs then stopped tendering payments in anticipation that the payments would be rejected.
After Chase refunded and re-deposited plaintiffs' mortgage payments on 3 and 21 November 2011, Chase initiated foreclosure proceedings on all eight properties. Between 4 June 2013 and 24 September 2013, foreclosure hearings were held in which the clerk entered orders authorizing foreclosure sales of all eight properties. Plaintiffs appealed the orders authorizing foreclosure sales of six of the properties. The other two properties were sold at foreclosure on 3 and 22 October 2013.
Plaintiffs further alleged in the amended complaint that since initiating the foreclosure proceedings, someone purporting to be an agent of Chase contacted tenants in the eight properties and instructed those tenants that plaintiffs no longer owned the properties and they must vacate the premises. Plaintiffs alleged they lost tenants and rental payments as a result.
Based on these allegations, plaintiffs asserted causes of action for breach of contract, promissory estoppel, negligent misrepresentation, tortious interference with contracts and business expectancy, and quantum meruit.
On 6 February 2014, plaintiffs' appeals of the six foreclosure orders came on for hearing in Guilford County Superior Court. Upon consideration of each case, the superior court entered orders authorizing the substitute trustee to proceed with the foreclosures of the properties. Plaintiffs did not appeal the orders and the remaining six properties were eventually sold at foreclosure.[2]
On 1 May 2014, Chase responded to plaintiffs' amended complaint by filing a motion to strike, motion to dismiss, and answer to amended complaint. Chase's motions, along with a motion to dismiss by S & I, came on for hearing in Guilford County Superior Court before the Honorable V. Bradford Long on 19 May 2014.
At the hearing, Chase clarified its position that "the claims are-all depend upon a determination that the plaintiffs are not in default on the *418 loans at issue, and a conclusive default determination has been made in the foreclosure proceedings." Thus, Chase asserted there was a conclusive defect in each claim and the claims should be dismissed pursuant to Rule 12(b)(6). Chase further argued the issue of default could not be re-litigated and, therefore, the claims are barred by collateral estoppel. In support of its position, Chase presented numerous cases for the court's consideration, many of which were unpublished.
In response, plaintiffs correctly emphasized the unpublished cases were not binding. Plaintiffs then argued the present case was not about stopping the foreclosures, but about damages they allegedly incurred. Nevertheless, plaintiffs continued to argue against default stating this is not a case where they "blew this off, weren't making payments, were a year behind, six months behind. [Plaintiffs] were maybe a couple weeks behind, maybe, if that, and these payments were accepted over and over and over again." Plaintiffs believed "a breach of contract did occur because payments were accepted and then after months then all of a sudden they weren't accepted and then they were returned." When the trial court reiterated that default had been determined in the prior foreclosure proceedings, plaintiffs responded that they would argue there was no default, but even assuming there was a default, the claims for breach of contract, tortious *4 interference, and quantum meruit were still viable.
Upon consideration of the arguments and the case law presented by Chase, the superior court judge granted Chase's Rule 12(b)(6) motion to dismiss the case. In so deciding, the trial court explained:
Gentlemen, it appears to me that each of these stays contingent upon there not being a default existing or the claims are barred by other principles, the promissory estoppel claims of defense, and that's set out in each one of these cases, published or unpublished.
It's a defense, it's not a claim you can assert. The claims are by and large predicated on the fact that they cannot exist when a default is found and the foreclosure has proceeded to termination, and that's what's happened in this case, whether at the Superior Court level or the District Court level.
Two days later on 21 May 2014, the trial court entered an order memorializing its determination that "[t]he [a]mended [c]omplaint fails to state a claim upon which relief may be granted, and should be dismissed *419 pursuant to Rule 12(b)(6)." In addition, the trial court granted Chase's motion to strike plaintiffs' motions for injunctive relief.
On 20 June 2014, plaintiffs filed notice of appeal from the 21 May 2014 order. Approximately three months later, plaintiffs filed a stipulation and notice of partial withdrawal of appeal in which plaintiffs withdrew their appeal as to S & I and Trustee Services. In doing so, plaintiffs acknowledged that the substitute trustees' involvement in the matter was moot because the foreclosures of the deeds of trust were complete and were not challenged in this case. Furthermore, plaintiffs clarified that they "seek consideration by [this Court] only of the dismissal of [their] claims against [Chase] for breach of contract, promissory estoppel, negligent misrepresentation, tortious interference with contracts and business expectancy, and quantum meruit."
II. Discussion
On appeal, plaintiffs contend the trial court erred in granting defendant's motion to dismiss the case pursuant to Rule 12(b)(6). In general,
[t]he motion to dismiss under [ N.C. Gen.Stat. § 1A-1, Rule] 12(b)(6) tests the legal sufficiency of the complaint. In ruling on the motion the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted.
Stanback v. Stanback, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979) (citations omitted). "This Court must conduct a de novo review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." Leary v. N.C. Forest Prods., Inc., 157 N.C.App. 396, 400, 580 S.E.2d 1, 4, aff'd per curiam, 357 N.C. 567, 597 S.E.2d 673 (2003).
A complaint may be dismissed pursuant to Rule 12(b)(6) where (1) the complaint on its face reveals that no law supports a plaintiff's claim, (2) the complaint on its face reveals the absence of facts sufficient to make a good claim, or (3) the complaint discloses some fact that necessarily defeats a plaintiff's claim.
Horne v. Cumberland Cnty. Hosp. Sys., Inc., --- N.C.App. ----, ----, 746 S.E.2d 13, 16 (2013) (quotation marks and citation omitted).
"If ... matters outside the pleading are presented to and not excluded by the court, the motion [will ordinarily] be treated as one *420 for summary judgment and disposed of as provided in Rule 56[.]" N.C. Gen.Stat. § 1A-1, Rule 12(b) (2013). Yet, as both parties acknowledge, in this case the trial court properly considered the final orders by the clerk and superior court judge in the foreclosure proceedings, which were attached to defendant's motion to dismiss, without converting the Rule 12(b)(6) motion into a motion for summary judgment. See Stocum v. Oakley, 185 N.C.App. 56, 61, 648 S.E.2d 227, 232 (2007) ("Trial courts may properly take judicial notice of its own records in any prior or contemporary case when the matter noticed has relevance.") (quotation marks and citation omitted). Plaintiffs, however, contend copies of the promissory notes and *5 deeds of trust executed in connection with the mortgage loans, which were also attached to Chase's motion to dismiss, were not considered by the trial court and should not be considered on appeal. We disagree.
[T]his Court has stated that a trial court's consideration of a contract which is the subject matter of an action does not expand the scope of a Rule 12(b)(6) hearing and does not create justifiable surprise in the nonmoving party. This Court has further held that when ruling on a Rule 12(b)(6) motion, a court may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant.
Oberlin Capital, L.P. v. Slavin, 147 N.C.App. 52, 60, 554 S.E.2d 840, 847 (2001) (citations omitted). Thus, in addition to plaintiffs' amended complaint and the final foreclosure orders, the promissory notes and deeds of trust specifically referred to in plaintiffs' amended complaint and attached to Chase's motion to dismiss are properly before this Court for review of whether the trial court erred in dismissing plaintiffs' amended complaint for failure to state a claim upon which relief may be granted.
On appeal, plaintiffs first argue their claims are not barred by principles of res judicata or collateral estoppel. Specifically, plaintiffs contend the trial court's ruling that plaintiffs' claims are contingent on there not being a default is erroneous. Upon review, we disagree and hold plaintiffs' claims are contingent on there not being a default, an issue plaintiffs are collaterally estopped from re-litigating in this case.
In Phil Mechanic Constr. Co., Inc., v. Haywood, 72 N.C.App. 318, 325 S.E.2d 1 (1985), the plaintiffs filed suit to recover money owed on a debt secured by a deed of trust and to foreclosure on the deed of trust.
*421 72 N.C.App. at 319, 325 S.E.2d at 1. However, in a prior special proceeding before the Clerk of Superior Court to determine the validity of the debt secured by the deed of trust and the trustee's right to foreclose, the Clerk denied plaintiffs' request to proceed to foreclosure under the power of sale contained in the deed of trust upon finding that one of the defendants had no prior knowledge of the deed of trust and had not signed the deed of trust. Id. at 319, 325 S.E.2d at 1-2. Because plaintiffs did not appeal from the Clerk's decision, the trial court found the Clerk's order became final as to the issues and parties and dismissed plaintiffs' subsequent suit on grounds of res judicata. Id. at 319-20, 325 S.E.2d at 2. On appeal, this Court affirmed the dismissal, explaining that "when a mortgagee or trustee elects to proceed under [N.C. Gen.Stat. § ] 45-21.1 et seq., issues decided thereunder as to the validity of the debt and the trustee's right to foreclose are res judicata and cannot be relitigated in an action for strict judicial foreclosure." Id. at 322, 325 S.E.2d at 3. For that reason, "[s]ince [the] plaintiffs did not perfect an appeal of the order of the Clerk of Superior Court, the clerk's order is binding and [the] plaintiffs [were] estopped from arguing those same issues in [a subsequent] case." Id.
As detailed in Chase's argument to the trial court in the present case, this Court has further addressed the preclusive effects of orders authorizing foreclosures on subsequent suits in a number of cases within the past year and a half, albeit in unpublished decisions. See Petri v. Bank of America, N.A., --- N.C.App. ----, 757 S.E.2d 524, COA 13-907 (4 Feb. 2014) (unpub.), available at 2014 WL 458095 ; Friedman v. Bank of America, N.A., ---N.C.App. ----, 758 S.E.2d 481, COA 13-483 (18 March 2014) (unpub.), available at 2014 WL 1042259 ; Anderson v. Aurora Loan Servs., LLC, ---N.C.App. ----, 758 S.E.2d 903, COA 13-844 (15 April 2014) (unpub.), available at 2014 WL 1464298 ; Armstrong v. Hutchens, --- N.C.App. ----, 763 S.E.2d 17, COA 13-1225 (1 July 2014) (unpub.), available at 2014 WL 2980261 ; Mazzone v. Bank of America, N.A., --- N.C.App. ----, 767 S.E.2d 705, COA 14-804 (2 December 2014) (unpub.), available at 2014 WL 6907563 ; Jabez Consol. Holdings, Inc. v. Wells Fargo Bank, N.A., --- N.C.App. ----, 768 S.E.2d 64, COA 14-552 (16 December 2014) (unpub.), available at 2014 WL 7149462 ; Espey v. Select Portfolio Servs., Inc., --- N.C.App. ----, 772 S.E.2d 264, COA 14961 (7 April 2015) (unpub.), *6 available at 2015 WL 1534068. In each of those cases, this Court affirmed the lower court's dismissal pursuant to Rule 12(b)(6) upon determining the plaintiffs were collaterally estopped from relitigating an issue decided in a prior foreclosure action that barred recovery in the plaintiffs' subsequent cases. *422 Although unpublished decision are not binding, we find these recent decisions, in conjunction with Phil Mechanic, instructive in the present case.
This Court has explained that,
[u]nder the doctrine of collateral estoppel, or issue preclusion, "a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties or their privies." A party asserting collateral estoppel is required to show that "the earlier suit resulted in a final judgment on the merits, that the issue in question was identical to an issue actually litigated and necessary to the judgment, and that both the party asserting collateral estoppel and the party against whom collateral estoppel is asserted were either parties to the earlier suit or were in privity with parties."
Williams v. Peabody, 217 N.C.App. 1, 6, 719 S.E.2d 88, 93 (2011) (citations omitted) (quoting State ex rel. Tucker v. Frinzi, 344 N.C. 411, 414, 474 S.E.2d 127, 128-29 (1996) ). In a foreclosure under power of sale, the issues determined by the clerk before a foreclosure is authorized to proceed are:
the existence of (i) valid debt of which the party seeking to foreclose is the holder, (ii) default, (iii) right to foreclose under the instrument, (iv) notice to those entitled to such under subsection (b), (v) that the underlying mortgage debt is not a home loan as defined in [N.C. Gen. Stat. § ] 45-101(1b), or if the loan is a home loan under [N.C. Gen.Stat. § ] 45-101(1b), that the pre-foreclosure notice under [N.C. Gen.Stat. § ] 45-102 was provided in all material respects, and that the periods of time established by Article 11 of this Chapter have elapsed, and (vi) that the sale is not barred by [N.C. Gen.Stat. § ] 45-21.12A [.]
N.C. Gen.Stat. § 45-21.16(d) (2013) (emphasis added). " 'If the foreclosure action is appealed to the superior court for a de novo hearing, the inquiry before a judge of superior court is also limited to the same issues.' " In re Hudson, 182 N.C.App. 499, 502, 642 S.E.2d 485, 488 (2007) (quoting Espinosa v. Martin, 135 N.C.App. 305, 308, 520 S.E.2d 108, 111 (1999) ).
*423 In the present case, the orders of the clerk and superior court judge allowing foreclosure on the eight properties in the prior foreclosure proceedings are conclusive on the issue of default and other issues required to be determined under N.C. Gen.Stat. § 45-21.16(d), barring relitigation. Thus, our analysis begins with the premise that plaintiffs were in default and the foreclosures were proper.
The central issue now before this Court on appeal is whether the default determinations in the foreclosure orders are fatal to plaintiffs' claims in the present case. Plaintiffs contend they are not and argue the complaint states valid claims for breach of contract, breach of the implied covenant of food faith and fair dealing, negligent misrepresentation, tortious interference with contracts and business expectancy, quantum meruit, and punitive damages. Plaintiffs assert these claims depend in large part on equitable principles which could not have been raised in the foreclosure proceedings before the clerk or superior court judge. Upon review, plaintiffs' arguments lack merit and we hold the default determinations in the foreclosure proceedings are fatal to plaintiffs' claims.
While it is true that "[e]quitable defenses to foreclosure ... may not be raised in a hearing pursuant to [N.C. Gen.Stat.] § 45-21.16 or on appeal therefrom[,]" In re Foreclosure of Goforth Props., Inc., 334 N.C. 369, 374-75, 432 S.E.2d 855, 859 (1993), equitable defenses to foreclosure may be raised in a separate action to enjoin the foreclosure prior to the time the rights of the parties become fixed. See N.C. Gen.Stat. § 45-21.34 (2013). In this case, plaintiffs sought to enjoin the foreclosures but did not appeal when the trial court denied those efforts. The *7 rights of the parties then became fixed pursuant to N.C. Gen.Stat. § 45-21.29A.
In regards to specific claims, we hold plaintiffs' claims for breach of contract, negligent misrepresentation, tortious interference with contracts and business expectancy, and quantum meruit are barred by the final determinations as to the rights of the parties in the foreclosure proceedings. First, a review of the amended complaint shows that all damages alleged by plaintiffs stem from the foreclosures of the properties. Specifically, the damages alleged include loss of tenants and renters, loss of rental income, harm to plaintiffs' credit record resulting in increased interest rates and impairment in plaintiffs' ability to obtain new credit, and losses from upgrading and improving the properties. Where the foreclosures were conducted pursuant to orders by the clerk and superior court judge, we hold plaintiffs cannot recover damages resulting from the foreclosures of the properties. Second, a *424 review of the promissory notes and deeds of trust reveal that the acts plaintiffs allege as the basis of their claims-Chase's failure to reinstate a mortgage, Chase's refusal of plaintiffs' monthly mortgage payments, Chase's foreclosure of the properties, and Chase's communications with plaintiffs' tenants and acceptance of rental payments-were permitted upon plaintiffs' default. Thus, plaintiffs cannot complain of those acts. Specifically, the promissory notes provide that plaintiffs are in default if they do not pay the full amount of each monthly payment on the first day of each month. As conclusively determined in the foreclosure proceedings, and as evidenced by plaintiffs acknowledgement in the amended complaint that they did not make payments on the first day of each month, plaintiffs were in default. Upon default, the deeds of trust provide the trustee the right to foreclose on the properties under power of sale. Pursuant to the terms of the deeds of trust, all improvements to the properties were considered as part of the properties and governed by the security instruments. Furthermore, the deeds of trust allowed Chase to return plaintiffs' payments if the payments were insufficient to bring the loan current, or to accept payments without a waiver of future rights. Thus, once plaintiffs had defaulted, Chase had the right to return plaintiffs' payments and foreclose on the properties, including improvements. Moreover, the parties executed a family rider at the same time as the promissory notes and deeds of trust by which plaintiffs assigned to Chase all rents from the properties. Pursuant to the terms of the family rider, Chase was required to give notice to plaintiffs' tenants before it could accept rental payments from the tenants upon default.
Considering the above, we hold the default determinations in the foreclosure proceedings defeat plaintiffs' claims for breach of contract, negligent misrepresentation, tortious interference with contracts and business expectancy, and quantum meruit in the present suit.
On appeal, plaintiffs also argue the complaint stated valid claims for breach of the implied covenant of good faith and fair dealing and for punitive damages.[3] In regards to the good faith and fair dealing claim, although plaintiffs recognize they did not label the claim as a cause of action, plaintiffs assert the allegations in the amended complaint were sufficient to state the claim. See Stanback, 297 N.C. at 202, 254 S.E.2d at 625 ("[W]hen the allegations in the complaint give sufficient notice of *425 the wrong complained of an incorrect choice of legal theory should not result in dismissal of the claim if the allegations are sufficient to state a claim under some legal theory."). Specifically, plaintiffs claim Chase made assurances it would accept, credit, and apply plaintiffs' monthly payments properly. Yet, there is no indication that Chase acted in violation of the terms governing payments in the security instruments based on the allegations in the amended complaint concerning Chase's management of plaintiffs' monthly payments. Thus, we hold plaintiffs have not stated a *8 valid claim for breach of the implied covenant of good faith associated with all contracts. In regard to plaintiffs' claim for punitive damages, we note that a claim for punitive damages is not a stand-alone claim. A claim for punitive damages may succeed only if plaintiffs prove Chase was liable for compensatory damages and their injury was the result of fraud, malice, or willful or wanton conduct. N.C. Gen. Stat. § 1D-15(a) (2013). Because we hold the default determinations are fatal to plaintiffs' other claims, plaintiffs' claim for punitive damages also fails.
III. Conclusion
Considering plaintiffs' amended complaint in combination with the foreclosure orders, promissory notes, and deeds of trust, we hold the determinations of default by the clerk and superior court judge in the foreclosure proceedings are fatal to plaintiffs' claims in the present case. Thus, we affirm the trial court's dismissal of plaintiffs' action pursuant to Rule 12(b)(6).
AFFIRMED.
Judges STEELMAN and STEPHENS concur.

S & I later argued in its 7 May 2014 answer and motion to dismiss that it was never a substitute trustee with respect to any of the deeds of trust in controversy, but was the attorney for the substitute trustee in several matters.

Plaintiffs make clear in their brief they do not seek reversal of the foreclosures.

Plaintiffs also asserted promissory estoppel as a cause of action in their amended complaint. Plaintiffs, however, have failed to raise any argument on appeal with respect to the validity of their promissory estoppel claim and therefore have abandoned the issue. See N.C. R.App. P. 28(a) ("Issues not presented and discussed in a party's brief are deemed abandoned.").